IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA H. CORDERO, | No. C06-02529 MJJ |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| FINANCIAL ASSISTANCE INC., | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendant Experian Information Solutions, Inc.'s ("Experian" or "Defendant") Motion for Summary Judgment.[1] Plaintiff Cecilia H. Cordero ("Plaintiff" or "Cordero") opposes the motion. For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's motion.

## FACTUAL BACKGROUND

This case presents a dispute under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Unless otherwise noted the Court finds the following facts undisputed.

Defendant operates a credit reporting agency pursuant to the FCRA and acts as a conduit of credit information that is pertinent to credit granting and related decisions. Defendant gathers credit information originated from other sources and makes that information available to parties engaged in credit related transactions. Defendant does not originate or create any credit information and does

---

[1] Docket No. 59.

not makes loans or decide who should receive credit. Plaintiff is an individual residing in Daly City, California, who disputed certain incorrect information existing on her credit report.

On or about August 2005, Plaintiff's daughter, a minor, allegedly shoplifted merchandise at a department store in San Francisco. The department store subsequently assigned an alleged resulting debt to Financial Assistance, a collection agency, on or about August 12, 2005. Financial Assistance sent letters to Plaintiff on August 21, 2005 and September 28, 2005, demanding payment of the debt. In October 2005, Financial Assistance reported the debt to three national consumer credit bureaus, including Defendant. In reporting the debt, Financial Assistance provided Defendant with Plaintiff's name, social security number, and address. As a result, Defendant claims that it had no way of knowing the debt did not, in fact, belong to Plaintiff.

On February 20, 2006, Plaintiff obtained a copy of her credit report from a website entitled, FreeCreditReport.com. The website contained a notation at the top of the page that read, "freecreditreport.com from Experian." In obtaining her credit report, Plaintiff provided certain information, including her social security number. Upon review of her credit report, Plaintiff wrote to Defendant the same day to dispute the Financial Assistance debt then appearing on her Experian credit report.[2] In her dispute submission, Plaintiff provided Defendant with her maiden name (as it appeared on the Financial Assistance documentation), her address, and the reference order number from FreeCreditReport.com. Plaintiff's dispute submission did not provide Defendant with her social security number. Defendant responded to Plaintiff by notice, dated March 6, 2006, requesting Plaintiff to provide additional identification information "listed above" because Defendant was "unable[3] to access [her] report using the identification information [she] provided."[4] Plaintiff did not

---

[2]Plaintiff also disputed the Financial Assistance debt with two other national consumer credit bureaus. The two other credit bureaus reinvestigated and removed the Financial Assistance debt from Plaintiff's credit report.

[3]The parties are in dispute as to whether Defendant was able to access Plaintiff's report without a social security number. On October 13, 2006, after obtaining an order from the assigned discovery Magistrate Judge, Plaintiff's counsel and Plaintiff's computer consultant tested Defendant's computer system and database during the deposition of one of Defendant's employees. Plaintiff's counsel tested two terminals in Defendant's database. The first terminal was set up to access Defendant's database in the same manner as Defendant's employees are able to access it. The second terminal was set up to access the database the way a "Subscriber" would access it. Defendant's employee deponent ran searches for Plaintiff on both terminals first using Plaintiff's social security number, then without using Plaintiff's social security number. The searches produced virtually identical results. Plaintiff argues this is dispositive evidence that Defendant is not "unable" to access a consumers report without a social security number. Defendant responds that based on its experience, it has

2

1 provide Defendant with her social security number and Defendant's have no record of Plaintiff
2 attempting to contact Defendant regarding the disputed information on her credit report. Plaintiff
3 claims that she refrained from providing her social security number because she had been warned by
4 FreeCreditReport.com to keep her social security number secret to prevent identity theft. Plaintiff
5 claims that she also believed that Defendant already had her social security number because she had
6 provided it in obtaining her credit report from "FreeCreditReport.com from Experian."

7 On April 11, 2006, Plaintiff filed the current action. On June 5, 2006, Defendant contends
8 that one of its former counsel obtained Plaintiff's social security number from Plaintiff's counsel.
9 Defendant maintains that it promptly conducted a reinvestigation of the Financial Assistance debt on
10 Plaintiff's credit report and deleted the incorrect entry on July 3, 2006. Plaintiff's counsel denies
11 that he or his firm provided Plaintiff's social security number to Defendant or Defendant's counsel.
12 Plaintiff argues that the only reasonable inference to be drawn is that Defendant was able to

---

implemented a policy to require all consumers to provide a social security number before it will reinvestigate a disputed account. Defendant maintains that this is a reasonable policy given the changing nature of credit information and consumer's personal identification information (*i.e*., last names, home addresses, open accounts, public records). Defendant states that its consumer credit information is stored in a complex system of national databases containing approximately 200 million names and addresses and about 2.6 billion trade lines (*i.e*., consumer accounts information, judgments). Defendant processes over 50 million updates to trade information each day. Defendant considers the social security number to be a very important and valuable identifier because it helps ensure that Defendant can generate for a consumer a complete disclosure of their credit history and greatly facilitates the reinvestigation process. The social security number also helps Defendant to avoid displaying consumer credit information on a credit report that does not belong to the consumer in question. Thus, Defendant requires the consumer to furnish their social security number in order to ensure completeness of the consumer reports. Defendant also explains that lenders report trade lines (accounts opened with consumers) with a social security number as a means of identification. As a result, Defendant considers it prudent, as well as reasonable, to use the same identification source.

[4] In support of their motion, Defendant provides an incomplete copy of the March 6, 2006 letter. Defendant provides only page 1 of the purported 2-page letter. Defendant contends that it cannot locate the letter because Defendant does not retain the letters in its system or records after mailing the letters to the consumer. Defendant states that Plaintiff failed to produce the entire letter in discovery. Defendant explains that the letter is a standard document sent to consumers who submit disputes, but fail to provide sufficient information to enable Defendant to conduct a reasonable investigation. Defendant explains that the letter is a two-sided document, which establishes that Plaintiff in fact received the entire letter. The second page of Defendant's standard document reads, in part, "if you write to us to request an investigation, please send all of the identification information listed above, and list each item on your report that you believe is inaccurate, the account number and the specific reason you feel the information is incorrect." The first page of Defendant's standard document, reads, in part, "The federal Fair Credit Reporting Act states, 'A consumer credit reporting company shall require as a condition of disclosure that the consumer furnish proper identification;' therefore, if you write to us, we must require all of the following information in order to process your request: full name, including middle name and generations (such as JR, SR, II, III); current mailing address; Social Security number (required to obtain your report); date of birth; and complete addresses for the past two years (including apartment numbers and ZIP codes). In addition, enclose one copy of a government issued identification card, such as a driver's license, state ID card, military ID card, etc., and one copy of a utility bill, bank or insurance statement, etc. . . . ."

3

1  investigate the Financial Assistance debt without her social security number.

2        Plaintiff claims that Defendant's failure to timely remove the Financial Assistance debt from
3  her credit report impacted her credit score causing Plaintiff and her husband to lose a certain
4  qualification for a favorable loan financing program on a house they had purchased.  As a result,
5  Plaintiff claims her mortgage lender, CityMutual Financial, charged a higher rate of interest over the
6  course of a 30-year mortgage.  Plaintiff essentially asserts three claims against Defendant for
7  violations of the FCRA within Count III of the Complaint: (1) a violation of § 1681b for furnishing a
8  consumer report to Financial Assistance without a permissible purpose; (2) a violation of § 1681b
9  for failing to maintain reasonable procedures to limit the furnishing of consumer reports to the
10  purposes listed under § 1681b as required by § 1681e(a); and (3) violation of 1681i for failing to
11  conduct an investigation when it received the dispute letter from Plaintiff.  (Complaint ("Compl."), ¶
12  ¶ 31-36.)  Defendant now seeks an order granting summary judgment as to these claims.

13        Defendant asserts that Plaintiff's § 1681b claims fail because Plaintiff has failed to show that
14  Defendant furnished her consumer report to Financial Assistance.  In the alternative, Defendant
15  maintains that Plaintiff's first claim fails because even if Defendant furnished a Plaintiff's credit
16  report to Financial Assistance it was for collection of a debt, which is a permissible purpose under
17  the FCRA and Ninth Circuit case law.  Defendant argues that Plaintiff's § 1681i claim fails because
18  Defendant conducted a reasonable investigation and deleted the incorrect entry on Plaintiff's credit
19  report once Defendant received the necessary information to do so.  Lastly, Defendant makes an
20  argument regarding the causation of Plaintiff's alleged damages.  In particular, Defendant avers that
21  Plaintiff has failed to show that Defendant caused any actual damages or acted willfully to support a
22  claim for punitive damages.[5]

---

[5] In its Reply memorandum, Defendant makes a new argument regarding Plaintiff's FCRA damages.  Specifically, Defendant contends that Plaintiff's alleged actual and emotional damages are business damages stemming from credit reports that were pulled in connection with Plaintiff's attempts to secure mortgages for her business rental properties and that such business damages are not recoverable under the FCRA.  Defendant explains that it learned of this alleged fact for the first time during Plaintiff's deposition on October 19, 2006 - two days after Defendant filed the pending motion.  Plaintiff objects and states that if given leave by the Court to address Defendant's new argument, Plaintiff would present admissible evidence establishing that Plaintiff and her husband purchased the house to live in, not as a business rental property.  The Court offered Plaintiff an opportunity to present evidence and argument on the issue of business damages at the hearing.

4

**LEGAL STANDARD**

**I.     Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

**II.    The Fair Credit Reporting Act**

The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). "The FCRA provides for compensation in the form of actual damages and attorneys' fees if a consumer reporting agency negligently fails to comply with any provision of the FCRA." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332 (9th Cir. 1995) (citing 15 U.S.C. § 1681o). A consumer can also recover punitive damages from a

defendant for willful non-compliance with the FCRA. *Id.* (citing 15 U.S.C. § 1681n).

**ANALYSIS**

**I.     Plaintiff's § 1681b Claims**

Plaintiff's first two claims within Count III allege violations of § 1681b of the FCRA for Defendant's acts of: (1) furnishing a consumer report to Financial Assistance without a permissible purpose; (2) failing to maintain reasonable procedures to limit the furnishing of consumer reports to the purposes listed under § 1681b as required by § 1681e(a). (Compl. ¶¶ 32-33.) Defendant argues that Plaintiff's allegation that Defendant furnished Plaintiff's credit report to Financial Assistance is unsupported by specific facts.[6] Alternatively, Defendant contends that even if it had furnished Financial Assistance with Plaintiff's credit report, there would be no violation of § 1681b because collection of a debt is a permissible purpose as a matter of law under the FCRA and Ninth Circuit case law. Plaintiff does not substantively respond to Defendant's arguments or defend her underlying § 1681b claim. The Court finds Defendant's arguments regarding Plaintiff's § 1681b claims to be well-taken.

Section 1681b, entitled "Permissible purposes of consumer reports," reads, in pertinent part, that a consumer reporting agency may furnish a consumer credit report to a person it has reason to believe "intends to use the information in connection with a . . . review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).[7] The issue of whether a credit report has been obtained for a permissible purpose is a question of law that may properly be decided in the context of a motion for summary judgment. *Hasbun v. County of Los Angeles*, 323 F.3d 801 (9th Cir. 2003) (granting summary judgment and finding collection of a debt is considered to "the collection of an account" under § 1681b and is a permissible purpose of consumer reports) (citing *Duncan v.*

---

[6] To the contrary, Defendant argues that it has produced affirmative facts showing that Defendant did not furnish Plaintiff's credit report to Financial Assistance. Defendant has offered evidence establishing that if Defendant had furnished Plaintiff's credit report to Financial Assistance, the event would appear in the "Inquiry" section of Plaintiff's Experian credit report. Plaintiff's consumer disclosure report dated June 6, 2006 lists all subscriber inquires that were made on Plaintiff for the preceding two years. Defendant has no record of Financial Assistance obtaining Plaintiff's credit report. Moreover, if Financial Assistance had pulled Plaintiff's credit report, Defendant would have billed for the inquiry. Defendant offers evidence from its billing records indicating an absence of any inquiries by Financial Assistance regarding any consumer. *See* Fed. R. Evid. 803(6) and (7).

[7] Section 1681e(a), which enforces § 1681b, in part, requires consumer reporting agencies to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under § 1681b.

6

*Handmaker*, 149 F.3d 424, 428 (6th Cir. 1998); *Edge v. Professional Claims Bureau, Inc.*, 64 F. Supp 2d 115, 118 (E.D.N.Y. 1999); *Korotki v. Attorney Serv. Corp., Inc.*, 931 F. Supp. 1269, 1277 (D. Md. 1996)).  Additionally, a plaintiff bringing a claim that a reporting agency violated "the reasonable procedures" requirement of § 1681e must first show that the reporting agency furnished the report in violation of § 1681b.  *Washington v. CSC Credit Serv. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000) (citing *Andrews v. Trans Union Corp.*, 7 F. Supp. 2d 1056 (C.D. Cal. 1998), *rev'd on other grounds*, 534 U.S. 19 (2001)).

Here, Defendant contends it did not furnish Plaintiff's credit report to Financial Assistance. Defendant not only identifies an absence of evidence in support of Plaintiff's allegation, but also affirmatively presents specific facts in the record in support Defendant's contention.  Specifically, Defendant provides evidence that if Defendant would have furnished Plaintiff's credit report to Financial Assistance, such an event would appear in the "Inquiry" section of Plaintiff's Experian credit report.  Defendant also explains that if Financial Assistance would have otherwise pulled Plaintiff's credit report, such an activity would appear on Defendant's billing record.  Having met its initial burden under Rule 56, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  In response to Defendant's contentions and supporting evidence Plaintiff has failed to identify conflicting evidence in the record to support her allegation that Defendant furnished Plaintiff's credit report to Financial Assistance.  Moreover, Plaintiff's Opposition fails to address Defendant's contentions and supporting evidence.[8]  *See Nillson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988) (stating "[party] against whom summary judgment was entered made no showing of specific facts in their opposition to the summary judgment . . . [a]ccordingly, we hold that summary judgment was appropriate . . . .")  As a result, the Court finds that Plaintiff's § 1681b claims fail as a matter of law.  For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's § 1681b claims within Count III of the Complaint.

---

[8] The opening portion of the analysis section of Plaintiff's Opposition reads, "This case turns on the reinvestigation requirements of the FCRA, 15 U.S.C. § 1681i." (Plaintiff's Opposition, 11:19-20.)  Plaintiff does not address her § 1681b claims. At the hearing in this matter Plaintiff conceded that there was no evidence to support her § 1681b claims and that the Court should grant summary judgment to Defendants on those claims.

7

## II.     Plaintiff's § 1681i Claim

Plaintiff's third claim within Count III alleges violations of § 1681i of the FCRA against Defendant for failing to conduct a *reasonable investigation* of Plaintiff's dispute submission. In particular, Plaintiff alleges that Defendant improperly terminated the reinvestigation, Defendant failed to notify Financial Assistance of Plaintiff's dispute within the time allowed, failed to provide Financial Assistance with the relevant information regarding Plaintiff's dispute, failed to review and consider the information submitted by Plaintiff, and failed to provide Plaintiff with notice as required by § 1681i(6). Defendant argues that it did not violate § 1681i because it reasonably determined that Plaintiff failed to provide sufficient information, specifically her social security number, to reinvestigate the disputed item. 15 U.S.C. § 1681i(a)(3)(A). Defendant contends it provided notice to Plaintiff setting forth the information Plaintiff needed to provide and that Plaintiff failed to respond. Plaintiff counters that even without her social security number, she provided sufficient information for Defendant to investigate the disputed item. Plaintiff insists that since Defendant was capable of accessing her credit file without her social security number, then Defendant was required to conduct a reinvestigation and could not require additional information from Plaintiff as a prerequisite to conducting the reinvestigation. Thus, the issue before the Court is whether Defendant's decision to terminate the reinvestigation of disputed information where the consumer has failed to provide a social security number, despite a request to do so from Defendant, was reasonable as a matter of law under the FCRA.

The FCRA sets forth the procedural requirements for a reinvestigation of disputed information. Section 1681i(a) provides that if a consumer disputes the completeness or accuracy of information contained in the consumer's credit report and the consumer directly notifies the credit reporting agency of the dispute, the agency has thirty days to conduct a "*reasonable* reinvestigation" of the disputed information. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). Within 5 business days beginning from the date on which the credit reporting agency receives notice of a dispute from the consumer, the agency must provide notification of the dispute to the entity who provided the information in dispute. 15 U.S.C. § 1681i(a)(2)(A). In conducting a reinvestigation of disputed information, the consumer reporting agency must review and consider all relevant information

8

1  submitted by the consumer. 15 U.S.C. § 1681i(a)(4). The consumer reporting agency must provide
2  written notice of the results of a reinvestigation to the consumer not later than 5 business days after
3  the completion of the reinvestigation. 15 U.S.C. § 1681i(a)(6)(A). However, a consumer reporting
4  agency may terminate a reinvestigation of information disputed by a consumer "if the agency
5  *reasonably* determines that the dispute by the consumer is frivolous or irrelevant, including by
6  reason of a failure by a consumer to provide *sufficient* information to investigate the disputed
7  information." 15 U.S.C. § 1681i(a)(3)(A); *see also FTC v. Gill*, 71 F. Supp 2d 1030, 1036 (C.D.
8  Cal. 1999) (emphasis added).

9  In determining whether a consumer reporting agency's actions were reasonable under §
10 1681i, courts have looked to whether the agency followed "reasonable procedures" under § 1681e.
11 *See Thomas v. Trans Union, LLC*, 197 F. Supp. 2d 1233, 1237-40 (D. Or. 2002) (concluding that
12 reasonable procedures defense from § 1681e applies to the plaintiff's claim under § 1681i and
13 holding that reasonableness was a question of fact); *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092,
14 1099 (D. Ariz. 2003) (finding as with § 1681e(b), the agency can rebut liability under § 1681i by
15 presenting a "reasonable procedures defense," however reasonableness of a defendant's procedures
16 is a question for the jury to decide); *Rothery v. Trans Union, LLC*, 2006 WL 1720498, at *10 (D. Or.
17 2006) (stating that § 1681i requires the agency to use reasonable procedures in its reinvestigation
18 and finding the issue of whether the reinvestigation by the defendant was reasonable is a an issue
19 that should be resolved at trial); *Waddell v. Equifax Information Services, LLC*, 2006 WL 2640557,
20 at *3 (D. Ariz. 2006) (finding that the reasonable procedures defense under § 1681e is available for
21 alleged violations of § 1681g but that reasonableness creates a jury question).

22 Additionally, the Ninth Circuit has stated, the reasonableness of a credit reporting agency's
23 procedures under § 1681e and whether the agency actually followed those procedures "will be jury
24 questions in the overwhelming majority of cases." *Guimond*, 45 F.3d at 1333; *see also Crabill v.
25 Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (stating that generally, the reasonableness of
26 a consumer reporting agency's procedures is a factual question for the jury, even when the
27 underlying facts are undisputed). Therefore, summary judgment is appropriate only if the
28 "reasonableness" of defendant's procedures was beyond question. *Crabill*, 259 F.3d at 664. In

9

1 determining whether a procedure was reasonable, the court must consider the circumstances in
2 which the procedure was undertaken. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.
3 1996) (reasonable procedures under § 1681e are those that a reasonably prudent person would
4 employ under circumstances). The Court now turns to whether the reasonableness of Defendant's
5 decision to terminate the reinvestigation was beyond question.

6 Defendant relies on two cases in support of its argument that its decision to terminate the
7 reinvestigation was reasonable as a matter of law in light of Plaintiff's failure to provide her social
8 security number. First, Defendant cites *Anderson v. Trans Union*, 405 F. Supp. 2d 977 (W.D. Wis.
9 2005). In *Anderson*, the issue was whether the defendant consumer reporting agency's procedures
10 were reasonable. *Id*. at 982-83. There, the plaintiff disputed certain information on his credit report
11 and subsequently provided the defendant with two dispute letters containing an incorrect social
12 security number. *Id*. at 983. The defendant timely investigated and responded to the first letter, but
13 as to the second the defendant replied to the plaintiff requesting verification of the plaintiff's social
14 security number. *Id*. Because the plaintiff did not provide his social security number, the defendant
15 did not reinvestigate within the 30-day window prescribed by § 1681i(a)(1)(A) and did not notify the
16 plaintiff's creditors of the dispute within the 5-day window prescribed by § 1681(a)(2)(A). *Id*.
17 Relying on the reinvestigation termination provision in § 1681i(a)(3), the court found it was
18 reasonable for the defendant to request verification of the plaintiff's correct social security number.
19 *Id*. at 984. In granting summary judgment for the defendant, the court noted that the defendant
20 maintained records of over 200 million consumers with similar names, addresses, and social security
21 numbers and that the plaintiff failed to provide evidence upon which a reasonable jury could find
22 that the procedures were unreasonable. *Id*.

23 Second, Defendant cites *Sarver v. Experian Information Solutions, Inc*., 299 F. Supp. 2d 875
24 (N.D. Ill. 2004). In *Sarver*, the court similarly addressed the issue of whether the defendant
25 consumer reporting agency's procedures were reasonable. *Id*. at 876-77. There, the plaintiff wrote a
26 letter to defendant disputing information on the plaintiff's credit report, however the plaintiff did not
27 provide his social security number. *Id*. The defendant responded by letter requesting more specific
28 information about the plaintiff and plaintiff failed to respond to the request. *Id*. at 877. The

10

1  defendant argued that it was under no duty to conduct an investigation under § 1681i(a)(3)(A)
2  because the plaintiff did not sufficiently identify himself when he omitted his social security number.
3  *Id*. The court agreed stating, "[the plaintiff's] distaste for Experian's process does not make that
4  process unreasonable. The information requested before attempting to investigate the dispute was
5  reasonable." *Id*. The court held that the defendant had satisfied its duty to investigate under §
6  1681i(a). *Id*.

7        The Court finds Defendant's reliance on *Anderson* and *Sarver* unavailing for a number of
8  reasons. First, neither *Anderson* or *Sarver* are controlling decisions on this Court. Second, the
9  overwhelming authority of courts within the Ninth Circuit that have addressed the issue of whether
10 "reasonableness" may be decided as a matter of law at the summary judgment stage have declined to
11 grant summary judgment because the question of "reasonableness" is more appropriate for a jury.
12 *See, e.g.*, *Thomas*, 197 F. Supp 2d at 1237-40; *Acton*, 293 F. Supp. 2d at 1099; *Rothery*, 2006 WL
13 1720498, at *10; *Waddell*, 2006 WL 2640557, at *3. The Court notes that Defendant cited each of
14 these cases, with the exception of *Acton*, in its motion for other propositions. Third, unlike the
15 plaintiff in *Anderson*, Plaintiff has provided evidence upon which a reasonable jury could find that
16 Defendant's policy and procedure was unreasonable. Specifically, Plaintiff has identified specific
17 facts suggesting that Defendant's computer systems were able to locate Plaintiff's identical record in
18 two successive searches where one search was completed without her social security number, and
19 the other was not. This evidence supports Plaintiff's contention that Defendant could proceed with
20 the reinvestigation without Plaintiff's social security number. Defendant counters that it would be
21 unreasonable for the Court to find that it must conduct these types of searches without a social
22 security number. Defendant states that its consumer credit information is stored in a complex
23 system of national databases containing approximately 200 million names and addresses and about
24 2.6 billion trade lines (*i.e.*, consumer accounts information, judgments); that it processes over 50
25 million updates to trade information each day; that a social security number helps ensure a complete
26 disclosure of the particular consumer's credit history; that the social security number aids in
27 avoiding the display of consumer credit information that does not belong to the consumer in
28 question; and that lenders report trade lines (accounts opened with consumers) with a social security

11

number as a means of identification. However, these competing factual arguments regarding the reasonableness of Defendant's conduct are questions of fact for a jury. Fourth, there is a question of fact as to how Defendant obtained Plaintiff's social security number. Plaintiff claims that she never provided her social security to Defendant and therefore Defendant's removal of the disputed information was successfully completed without it. Defendant insists that it received Plaintiff's social security from Plaintiff's counsel. This is similarly a question of fact for the jury. For these reasons, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's § 1681i claims within Count III of the Complaint.

### III.   Damages

Within Count III of the Complaint, Plaintiff seeks actual damages, punitive damages, costs, and attorney fees for Defendant's alleged violations of the FCRA. Sections 1681n and 1681o create a private right of action under the FCRA. *See Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002). In particular, a consumer has a private right of action for willful and negligent noncompliance with any duty imposed by the FCRA and may recover actual damages and attorney fees and costs, as well as punitive damages for willful noncompliance. 15 U.S.C. § § 1681n and 1681o. The Court now turns to the issue of Plaintiff's damages.

####    A.    Actual Damages

#####        1.    Mortgage-Related Damages

Defendant asserts that Plaintiff is unable to show any actual mortgage-related damages caused by Defendant's actions. Defendant insists that it is undisputed that no creditors contacted Defendant to obtain, review, or use Plaintiff's Experian credit report in the time frame between Plaintiff's dispute letter on February 20, 2006, and the filing of her Complaint on April 11, 2006. In support, Defendant points to Plaintiff's Experian credit report which shows the creditor inquiries made by Plaintiff's mortgage lender as noted by the entry, "Land America Credit Services on behalf of CityMutual Financial." Those creditor inquiries were dated November 7, 2005 and April 27, 2006. Defendant explains that since the first inquiry occurred before Defendant was on notice of Plaintiff's dispute, and since the second inquiry occurred after Plaintiff filed the Complaint, there can be no liability under the FCRA upon which to base any mortgage-related actual damages.

12

1    Plaintiff responds by offering evidence from her mortgage lender, CityMutual Financial.
2    CityMutual Financial confirmed that it obtained Plaintiff's Experian credit report in "November
3    2005," and again in "late April 2006." CityMutual Financial stated that the Financial Assistance
4    item was the only derogatory information on Plaintiff's Experian credit report and because of that
5    derogatory information and resulting credit score, CityMutual Financial was not able to give
6    Plaintiff the best rate of interest or an expense free loan. However, Plaintiff does not offer evidence
7    of the precise dates of CityMutual Financial's credit inquiries. Moreover, Plaintiff does not dispute,
8    or offer competing evidence regarding, Defendant's contention that CityMutual Financial's inquiries
9    occurred precisely on November 7, 2005 and April 27, 2006.

10    A plaintiff bears the burden of proving actual damages sustained "as a result of [defendant's]
11    activities." *Casella v. Equifax Credit Information Services*, 56 F.3d 469 (2d Cir. 1995) (stating that
12    prior to being notified by a consumer, a credit reporting agency generally has no duty to
13    reinvestigate credit information); *Waddell*, 2006 WL 2640557, * 3 (stating that a plaintiff has the
14    burden of proving that damages were caused by the defendant's violations of the FCRA) (citations
15    omitted). Loss of opportunity in the mortgage market or a delay in obtaining credit resulting in less
16    favorable terms may constitute compensable damages under the FCRA. *Casella*, 56 F.3d at 475
17    (citing *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982). In the context of summary judgment on
18    damages, once the moving party meets its initial burden of identifying an absence of triable issue of
19    fact, the burden then shifts to the non-moving party to present specific facts showing that there is a
20    genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co.*,
21    475 U.S. at 586-87. Additionally, in order to sustain a § 1681i claim, a plaintiff must be able to
22    show actual injury caused by the credit reporting agencies failure to remove incorrect information
23    between in the time between the point at which the credit reporting agency receives notice and the
24    filing of the lawsuit. *See Sarver*, 299 F. Supp. 2d at 877 (finding that the plaintiff was unable to
25    show any actual injury caused by the incorrect information appearing on his credit report because no
26    credit granting agency requested plaintiff's credit report between the date of notice to defendant and
27    the filing of the lawsuit, therefore plaintiff's 1681i claim failed.)

28    Here, Defendant has demonstrated that Plaintiff's credit dispute first occurred on February

1  20, 2006. Therefore, Defendant could not possibly have had notice of any disputed information at
2  the time of CityMutual Financial's first credit inquiry. Defendant has also demonstrated that
3  CityMutual Financial's second credit inquiry occurred after Plaintiff had already filed this action. In
4  response, Plaintiff fails to offer specific evidence to rebut Defendant's supported contention and
5  therefore fails to meet her burden of demonstrating that any mortgage-related damages resulted from
6  Defendant's conduct. For these reasons, the Court **GRANTS** Defendant's Motion for Summary
7  Judgment as to Plaintiff's claims for mortgage-related actual damages within Count III of the
8  Complaint.

### 2. Business Damages

10  Defendants contend that damages to Plaintiff's businesses are not recoverable since a report
11  furnished to a potential creditor for business purposes is not a consumer report within the meaning of
12  the FCRA. Defendant argues that Plaintiff admitted at her deposition that the mortgage at issue was
13  for a rental property rather than primary residence. Plaintiff counters that she made no such
14  admission at her deposition and that the mortgage at issue was not for a rental property, but instead
15  for a house that she and her husband intended to live in. At the hearing, Plaintiff offered evidence
16  and argument regarding the issue of business damages. Plaintiff argued there was no evidence in the
17  record to support Defendant's contention that her damages were business damages thereby removing
18  them from the scope of the FCRA.

19  The FCRA applies only to "consumer reports." The statute defines "consumer reports" as
20  follows: any written, oral, or other communication of any information by a consumer reporting
21  agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general
22  reputation, personal characteristics, or mode of living which is used or expected to be used or
23  collected in whole or in part for the purpose of serving as a factor in establishing the consumer's
24  eligibility for (1) credit or insurance to be used primarily for personal, family, or household
25  purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this
26  title. *Natale v. TRW, Inc*., 1999 WL 179678, * 3 (N.D. Cal. 1999) (citing 15 U.S.C. § 1681a(d)). As
27  a result, several courts have held that where the purpose of a plaintiff's credit application was to
28  secure credit for business purposes, as opposed to personal, family or household purposes, the

14

reporting agency's conduct was not covered by the Act. *See, e.g., Yeager v. TRW, Inc.*, 961 F. Supp. 161, 162 (E.D. Tex. 1997); *Cook v. Equifax Information Systems, Inc.*, 1992 WL 356119 (D. Md. Nov. 20, 1992); *Wrigley v. Dun & Bradstreet, Inc.*, 375 F. Supp. 969, 970-971 (N.D. Ga. 1974).

Here, Defendant has failed to offer sufficient evidence that Plaintiff's mortgage was for a business rental property. Nowhere in Plaintiff's deposition does Plaintiff admit that the mortgage was for a rental property or other business-related investment. For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment as to the issue of whether Plaintiff's alleged damages are business damages.[9]

### 3. Emotional Distress Damages

Defendant contends that Plaintiff's allegations and supporting evidence are insufficient evidence of emotional distress. Plaintiff counters by arguing that as a result of Defendant's FCRA violations she has suffered emotional damages due to the negative impact on her credit score that she has worked hard to earn and maintain. Plaintiff states that Defendant's actions have caused her anger, frustration, embarrassment, and humiliation that have manifested in her relationships with her husband and children.

Actual damages under the FCRA can include recovery for emotional distress even if the consumer has suffered no out-of-pocket losses. *See Guimond*, 45 F.3d at 1333; *Stevenson v. TRW Inc.*, 987 F.2d 288, 296 (5th Cir. 1993). The Ninth Circuit has not addressed the type of evidence necessary to support an award of emotional distress damages under the FCRA, but has stated in other contexts that "[w]hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in the Ninth Circuit, or the Supreme Court." *Acton*, 293 F. Supp. 2d at 1101 (citing *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (holding in a discrimination action that the plaintiff's "testimony alone is enough to substantiate the jury's award of emotional distress damages") (ellipsis and citations omitted)); *see Johnson v. Hale*, 13 F.3d 1351, 1352-53 (9th Cir. 1994) (recognizing that "compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances,

---

[9]To the extent Plaintiff has incurred any remaining actual damages, that were not mortgage-related, the Court finds that Defendants have failed to raise a triable issue of material fact as to whether those remaining actual damages were business-related.

15

whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms").

Viewing the evidence in the light most favorable to Plaintiff, as the Court must do at this summary judgment stage, the Court concludes that Plaintiff's evidence of emotional distress damages is sufficient to create a question of fact for the jury. Plaintiff has offered evidence that she is an immigrant who has "worked very hard to establish and maintain good credit . . . [and] been very careful to pay [ ] bills on time and not to default on [ ] obligations." She declares that she and her husband have lived "frugally and have been able to invest in some rental properties" and has learned the "importance of a good credit rating and a high credit score." As a result, it has "been very upsetting to [her] to have had [her] credit record ruined by Experian . . . ." Plaintiff states that "[t]o have this on my credit record, available for my creditors to see, is embarrassing and humiliating" and that her "feelings have had an adverse impact [ ] with [her] relations with [her] husband and children and they have also made [her] feel sick and depressed from time to time." Defendant has failed to offer controlling authority to establish that Plaintiff's proffered emotional distress evidence is insufficient in this procedural context. For these reasons, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's claim of damages for emotional distress within Count III of the Complaint.

### B. Punitive Damages

Defendant argues that Plaintiff's claim for punitive damages fails as a matter of law because Plaintiff has offered no evidence of willful or reckless conduct. Plaintiff submits that Defendant's policy of refusing to investigate consumer disputes unless the consumer provides a social security number is evidence of an intentional and willful deception to deprive customers of their reinvestigation rights under the FCRA. In particular, Plaintiff posits that Defendant's standardized form letter, used to request additional information for reinvestigations, is deliberately drafted to prevent consumers from determining exactly what information the consumer failed to provide. Lastly, Plaintiff asserts that Defendant's relationship with "FreeCreditReport.com" is evidence that Defendant does not actually need the consumer to provide their social security number because Defendant should already have it when a consumer provides it to obtain their credit report from "FreeCreditReport.com."

16

Section 1681n provides for the recovery of statutory and punitive damages for willful noncompliance with the FCRA. *See* 15 U.S.C. § 1681n(a)(1)-(2). "Willful noncompliance occurs only when a defendant knowingly and intentionally commits an act in conscious disregard for the rights of others." *Waddell*, 2006 WL 2640557, at *5 (citations omitted). "[A]lthough the [willful] act must be intentional, it need not be the product of 'malice or evil motive.'" *Reynolds v. Hartford Fin. Serv. Group, Inc.*, 435 F.3d 1081, 1098 (9th Cir. 2006). "[A]s used in FCRA 'willfully' entails a 'conscious disregard' of the law, which means 'either knowing that policy [or action] to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy [or action] contravened those rights.'" *Id*. (citation omitted). The Ninth Circuit has stated,

> In sum, if a company knowingly and intentionally performs an act that violates FCRA, either knowing that the action violates the rights of consumers or in reckless disregard of those rights, the company will be liable under 15 U.S.C. § 1681n for willfully violating consumers' rights. A company will not have acted in reckless disregard of a consumers' rights if it has diligently and in good faith attempted to fulfill its statutory obligations and to determine the correct legal meaning of the statute and has thereby come to a tenable, albeit erroneous, interpretation of the statute. In contrast, neither a deliberate failure to determine the extent of its obligations nor reliance on creative lawyering that provides indefensible answers will ordinarily be sufficient to avoid a conclusion that a company acted with willful disregard of FCRA's requirement. Reliance on such implausible interpretations may constitute reckless disregard for the law and therefore amount to a willful violation of the law.

*Id*. at 1099.

Here, Plaintiff has failed to produce evidence that Defendant's policy of requiring social security numbers prior to reinvestigation constituted willful or reckless noncompliance of the FCRA. Nothing in the record suggests that Defendant's actions were anything but possibly negligent. Plaintiff's evidence that Defendant's standardized form letter is unclear, that Defendant's could conduct certain consumer searches without a social security number, and that Defendant had a business relationship with "FreeCreditReport.com," is not evidence of a deliberate intent to violate a consumer's FCRA rights. Furthermore, Plaintiff has not provided the Court with any legal authority where these facts supported an allegation for punitive damages. For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's claim for punitive damages

17

within Count III of the Complaint.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's § 1681b claims within Count III of the Complaint; as to Plaintiff's claims for mortgage-related actual damages within Count III of the Complaint; and as Plaintiff's claim for punitive damages within Count III of the Complaint.

The Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's § 1681i claims within Count III of the Complaint; as to Plaintiff's claim of damages for emotional distress within Count III of the Complaint; and as to the issue of whether Plaintiff's alleged damages are business damages.

**IT IS SO ORDERED.**

Dated: November 29, 2006

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE